SALLIE C. WEST, Employee v. J. P. STEVENS COMPANY, Employer; and LIBERTY MUTUAL INSURANCE COMPANY, Carrier

No. 7118IC525

(Filed 20 October 1971)

1. Master and Servant § 77— workmen's compensation — claim for change of condition — barring of claim

A plaintiff who failed to appeal from an Industrial Commission finding that there was no causal relation between the immobility in her right leg and an accident arising out of her employment *is held* barred from asserting a subsequent claim for change of condition with respect to the right leg.

2. Master and Servant § 77— workmen's compensation — claim for change of condition — change in degree of permanent disability — no change in physical condition

The Industrial Commission properly assessed the plaintiff's disability of her left leg, which was caused by phlebitis, at 27.5% upon hearing medical testimony that there was no longer any chance for improvement in the leg, notwithstanding the actual physical condition of the leg had not changed since the Commission previously assessed her disability at 12.5%, where the previous assessment of 12.5% had been based upon medical testimony that plaintiff had a 25% to 30% permanent partial disability which could be expected to improve to a disability of 10% to 15%.

3. Master and Servant § 77— change in condition — change in degree of disability

A change in the degree of permanent disability is a change in condition within the meaning of G.S. 97-47.

4. Master and Servant § 47— construction of workmen's compensation statute

The Workmen's Compensation Act should be liberally construed so that its benefits are not denied upon technical, narrow and strict interpretations.

APPEALS by plaintiff and defendants from order of North Carolina Industrial Commission filed 19 February 1971.

Plaintiff claims additional Workmen's Compensation benefits, pursuant to G.S. 97-47, on the ground she has undergone a change of condition.

On 7 October 1965 plaintiff fell in her home and broke her right leg. While she was in the hospital for treatment for this injury she reported to her employer, for the first time, that sometime in September 1965, she fell while at work and injured

her left leg. During her hospitalization it was noted that she had phlebitis in both legs. The broken leg healed but she continued to suffer from the phlebitis and was rehospitalized for this condition on 7 January 1966.

Hearings were held in December 1966 and February 1967 before Commissioner Shuford. On 15 March 1967 Mr. Shuford filed his order finding and concluding, among other things, that: On an unspecified date in September 1965 plaintiff sustained a compensable injury; she had reasonable excuse for not timely reporting the accident to her employer; as a result of phlebitis caused by that accident, plaintiff was temporarily totally disabled from 7 January to 14 September 1966; disability suffered prior to 7 January 1966 resulted from plaintiff's broken leg which did not constitute an injury by accident arising out of and in the course of her employment; and that plaintiff had recovered from her compensable injury without permanent disability. No appeal was taken from this order.

Plaintiff thereafter applied for review, pursuant to G.S. 97-47, on the ground that her condition had changed. A hearing was held in June of 1968 before Deputy Commissioner Delbridge, and on 9 December 1968, Mr. Delbridge filed an order in which he found that since the first hearing plaintiff's condition had changed and that she "now has a 12.5 percent permanent partial disability of her left leg." Additional compensation was awarded accordingly. The Full Commission affirmed the order. Plaintiff appealed to this Court, contending that the testimony of her physician Dr. John A. Lusk, who was the only witness, would support only a finding of a 25 or 30% permanent partial disability of the left leg. This Court rejected her contention and affirmed the Commission's order. *West v. Stevens*, 6 N.C. App. 152, 169 S.E. 2d 517.

Plaintiff thereafter applied a second time for additional compensation, again on the ground that her condition had changed. A hearing was held before Deputy Commissioner Thomas on 1 October 1970. Plaintiff's physician, Dr. Lusk, testified that a permanent disability which plaintiff had suffered in her right leg as a result of phlebitis at the time of the June 1968 hearing had increased about 10 to 15% and now constituted a 20 to 25% permanent partial disability; also, that the permanent disability in plaintiff's left leg was unchanged and that in his opinion future improvement in that leg is highly unlikely.

In an order filed 19 October 1970, Mr. Thomas denied any disability benefits with respect to the right leg. However, additional benefits were allowed with respect to the left leg, based upon a finding that plaintiff has sustained a change of condition to her left leg in that it has not improved as expected and she now has a 27.5% permanent partial disability in that leg. Mr. Thomas' order was affirmed by the Full Commission and both parties appealed to this Court.

*Smith & Patterson by Norman B. Smith for plaintiff appellant.*

*Smith, Moore, Smith, Schell & Hunter by Richmond G. Bernhardt, Jr., for defendant appellants-appellees.*

GRAHAM, Judge.

### PLAINTIFF'S APPEAL

[1] The Commission concluded that plaintiff is now barred from asserting a claim for disability to the right leg because in the order of 15 March 1967, which was not appealed, it was determined that the injury to that leg did not result from an accident arising out of and in the course of her employment. Plaintiff contends this conclusion is erroneous, arguing that there was competent evidence from which the Commission could have found that the phlebitis in both legs resulted from the industrial accident of September 1965 in which only her left leg was injured.

Plaintiff's physician, Dr. Lusk, did not testify on direct examination as to any causative connection between the present condition in plaintiff's right leg and the industrial accident of September 1965. On cross-examination he stated:

"I am testifying as to a condition of Mrs. West's legs, right and left, without regard at this point to the cause of that condition.

\*    \*    \*

She was hospitalized by Dr. William Wright for a fracture of the right ankle in late 1965, the injury having occurred in October 1965. She was readmitted to the hospital in early 1966 for phlebitis of both lower extremities. This was before I saw her for the first time. I would say

that the immobility could well have been the probable cause of the phlebitis in the right leg; she had phlebitis in both legs subsequently. As to whether my testimony is that the phlebitic syndrome in both legs could or might have, and in all probability would have been caused by the fracture of the right leg and the resulting immobility of the patient in the hospital, yes; I would put more emphasis on the immobility having caused the phlebitic syndrome, than the fracture having caused this."

Dr. Lusk's testimony, which is the extent of the evidence respecting causation, would not support a finding that the disability to plaintiff's right leg resulted from the industrial accident in September of 1965 in which only the left leg was injured. The immobility to which Dr. Lusk attributes plaintiff's right leg difficulties, was occasioned by her hospitalization for the broken right leg. Commissioner Shuford's order, filed 15 March 1967, finds that the fall which caused this injury did not arise out of and in the course of plaintiff's employment. We agree with the Commission that, no timely appeal having been taken from that order, plaintiff is now barred from claiming benefits with respect to the right leg.

Plaintiff argues that the condition of the right leg is due to a progression to the right leg of phlebitis, which was formerly disabling only in the left leg. The evidence does not support this theory. According to Dr. Lusk, a 10 to 15% permanent disability, caused by phlebitis, was already present in the right leg at the time of the hearing in June 1968. However, no award was made for this disability, and plaintiff did not contend, at least on appeal to this Court, that she was entitled to benefits for any disability to that leg. It is that disability which Dr. Lusk testified has now increased.

Plaintiff likens her case to that of *Knight v. Ford Body Co.*, 214 N.C. 7, 197 S.E. 563. There blood poisoning, which had caused the plaintiff to lose the use of his arm, progressed to other parts of his body and caused total disability. An award for a change of condition was upheld. However, the award in that case contained a finding that the employee's condition "at this time has been caused by the injury by accident suffered while employed." The Supreme Court found that there was competent evidence to support this finding. Here, we find no evidence which would support a similar finding with respect to the present condition of plaintiff's right leg.

The portion of the order denying plaintiff's claim for disability to the right leg is affirmed.

### DEFENDANTS' APPEAL

[2]   Defendants have appealed from that portion of the Commission's order in which plaintiff was awarded additional compensation on the ground she has suffered a change of condition of the left leg.

Whether there has been a change of condition is a question of fact; whether the facts found amount to a change of condition is a question of law. *Pratt v. Upholstery Co.,* 252 N.C. 716, 115 S.E. 2d 27.

There is no finding in the order now before us that the actual physical condition of plaintiff's left leg has changed since the Commission found, from evidence presented in the June 1968 hearing, that plaintiff "has a 12.5 percent permanent partial disability of her left leg." The Commission's present assessment of disability of the left leg at 27.5% is based upon its finding that the condition of the leg "has not improved as expected."

The evidence was that there has been no change in the disability of plaintiff's left leg although there has been a change in her physician's prognosis for any recovery. He testified: "I recall having testified in an earlier hearing in this matter in June, 1968. It was my testimony at that time that Mrs. West had a permanent partial disability to the left leg of 25% to 30%, and further that there was some hope for improvement of this condition, and if it did improve, I had hoped that it might improve to 10% to 15%. . . . [A]t the present time I find there has been no change in her legs since 1968; in other words there has been no improvement. It would be highly unlikely that there would be any further improvement at the present time."

Defendants contend that since plaintiff has failed to show any actual deterioration in her left leg since the prior order, she is not entitled to additional benefits. A change of condition, as that term is used in G.S. 97-47, means an actual change and not a mere change of opinion with respect to a pre-existing condition. *Pratt v. Upholstery Co., supra.*

However, in its present order the Commission has in effect interpreted its prior order as holding that in June of

West v. Stevens Co.

1968 plaintiff had a temporary 25 to 30% disability of the left leg which would improve and leave her with a permanent disability of 12.5%. In that order the Commission found that "it was the doctor's opinion that the plaintiff has a 25 to 30 percent permanent partial disability of the left leg now, but it could improve to a disability of 10 to 15 percent." This finding is followed by an assessment of the permanency at 12.5%.

Confusion arises because of the doctor's testimony, and the Commission's finding in accordance therewith, that plaintiff's *permanent* disability to the left leg of 25 to 30% could be expected to improve to 10 to 15%. Obviously, if plaintiff's condition improved, the degree of the disability she was then suffering was not permanent. By the same token, if the 25 to 30% disability she then suffered was permanent, it could not be expected to improve.

[3] We agree with the Commission's interpretation of its prior order. In that order there is no finding that plaintiff had reached a point of maximum recovery. It appears that the Commission undertook to rate the permanency of her disability during her healing period by attempting to anticipate the degree of her future recovery. Consequently, the 25 to 30% disability which she was found to have at that time, though designated in the order as permanent, must have in fact been considered by the Commission as only temporary. The Commission has now found this same degree of disability to be beyond improvement and therefore permanent. This means that there has been an actual change in the degree of plaintiff's permanent disability of the left leg from the 12.5% found in the prior order to 27.5%. A change in the degree of permanent disability is a change in condition within the meaning of G.S. 97-47.

[4] In reaching this conclusion we are guided by the fundamental principle that the Workmen's Compensation Act should be liberally construed so that its benefits are not denied upon technical, narrow and strict interpretations. *Hall v. Chevrolet Co.*, 263 N.C. 569, 139 S.E. 2d 857; *Johnson v. Hosiery Company*, 199 N.C. 38, 153 S.E. 591.

A question similar to the one presented here was considered by the Georgia Supreme Court in the case of *Miller v. Indemnity Insurance Co. of North America*, 55 Ga. App. 644, 190 S.E. 868. In that case the claimant was awarded compensation for only

75% loss of use of a broken leg on the theory that improvement would occur in the future. Later, it was determined that improvement was impossible. An award for an additional 25% loss of use of claimant's leg was allowed on the grounds that there had been a change of condition from an injury which was total with a possibility of reduction to one which was total with no possibility of improvement. We agree with this reasoning.

The portion of the order appealed from by defendants is affirmed.

Plaintiff's appeal affirmed.

Defendants' appeal affirmed.

Judges BROCK and VAUGHN concur.